IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-22729-CV-KING

SCOTT W. LEEDS, and
THE COCHRAN FIRM - MIAMI

      Plaintiffs,

v.

FIRST MERCURY INSURANCE
COMPANY, and STATE NATIONAL
INSURANCE COMPANY,

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER has all the elements of a gripping Cold War spy novel: spies, intrigue, and vast sums of money. More relevant to the proceeding before this Court, however, is one element that rarely surfaces in such novels: legal malpractice. Before the Court are cross Motions for Summary Judgment (DE #55, 58), filed by Plaintiffs and Defendants, respectively, on May 26, 2011.[1] Although the spy-novel elements noted above have some bearing on the background of this case, the issue now before the Court is simply whether certain actions taken by Plaintiff Leeds are covered by a professional liability insurance policy issued by Defendant State National to The Cochran Law Firm and others, including Scott W. Leeds.[2] For the following reasons, the Court finds that Defendants are not

---

[1] Each of the pending Motions for Summary Judgment is ripe for determination. As to Plaintiffs' Motion, Defendants filed both their Opposition (DE #59) and their Local Rule 7.5 Statement of Undisputed Material Facts (DE #60) on June 8, 2011, to which Plaintiffs filed a Reply (DE #64) on June 16, 2011. As to Defendants' Motion for Summary Judgment, Plaintiffs responded (DE #62) on June 9, 2011, to which Defendants filed a Reply (DE #63) on June 16, 2011.

[2] The Court notes that The Cochran Law Firm's interest in this action seems derivative at best. Additionally,

obligated to the Plaintiffs under that insurance policy.

## I. LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party – here, both Plaintiffs and Defendants – bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not

---

Plaintiffs fail to delineate any distinction between either of the Defendants. Nonetheless, where appropriate and for the sake of convenience, the Court will refer to Plaintiffs and Defendants collectively.

significantly probative, summary judgment is proper. *See id.* at 249–50.

## II. UNDISPUTED FACTS

The record before the Court reflects the following undisputed facts. For the sake of clarity, the Court has separated the three time periods relevant to the above-styled claim.

### A. Martinez Representation

Beginning in 1999, Plaintiff Leeds, along with another attorney, Fernando Zulueta, represented Ana Margarita Martinez in an action against the Republic of Cuba for her fraudulent marriage with a Cuban spy.[3] In that action, Ms. Martinez obtained a default judgment on liability and, after trial on damages, was awarded final judgment in the amount of $7,175,000, which was later amended on March 23, 2001 to include $20,000,000 in punitive damages. To assist in their effort to collect on Ms. Martinez's judgment, Leeds and Zulueta retained a New York attorney, Diane Conniff, towards the end of 2001 in part to assist them in collecting upon certain Cuban assets residing in New York. Soon after, in May 2002, Ms. Martinez, with Mr. Leeds' assistance, also retained the Miami law firm of Tew Cardenas to assist her in collection on her judgment. Through the efforts of Tew Cardenas, Ms. Martinez recovered $190,000 that had been in the possession of the United States Department of the Treasury.

Soon afterwards, Mr. Leeds represented another plaintiff, Dorothy Anderson McCarthy, in another action against the Republic of Cuba. In that action, Mr. Leeds was again successful on his client's behalf, helping her to obtain final judgment in the amount of $67,000,000. As he had with his representation of Ms. Martinez, Mr. Leeds assisted Ms. Anderson McCarthy in hiring Tew Cardenas to assist in collecting on the final judgment. In

---

[3] A 1999 New York Times articles recounts in some detail the factual basis for Ms. Martinez's action. *See* Rick Bragg, *Ex-Wife is Suing Cuba Over a Spy's Deception*, New York Times (Aug. 15, 1999), http://www.nytimes.com/1999/08/15/us/ex-wife-is-suing-cuba-over-a-spy-s-deception.html.

December 2006, Tew Cardenas collected over $67m in Cuban assets. Ms. Anderson's final judgment was satisfied with that collection.

However, Ms. Martinez, who had also hired Tew Cardenas and who presumably had a first-in-time claim on any proceeds recovered by the law firm, did not see a dime of the recovery. There is some confusion as to the cause of Ms. Martinez's inability to collect, although it appears that certain necessary domestication actions were not taken by either Leeds and Zulueta or the New York attorney they retained, Ms. Conniff. The result of those actions was that Ms. Martinez's claims had no priority over the funds obtained. When Ms. Martinez learned that her Final Judgment was not being satisfied from those proceeds obtained by Tew Cardenas, she contacted several attorneys, including Leeds, by email on August 23, 2007, asking why her judgment was not satisfied with the proceeds of the frozen Cuban assets that had also been used to satisfy the judgment obtained by Ms. McCarthy. In that inquiry, she did not demand monetary satisfaction from Mr. Leeds. Nonetheless, Mr. Leeds obtained representation of counsel, Robert Klein, in September 2007.[4]

### B. Issuance of Insurance Policy

On January 26, 2008, Defendants issued and delivered to Leeds and others a Claims Made Lawyers Professional Liability Policy, which was effective from January 26, 2008 through January 26, 2009. Leeds was one of the insured attorneys under the policy. By its terms, the policy provided coverage

---

[4] Plaintiffs initially claimed that Mr. Klein's retention was "so that no other parties would retain Klein's services" and not because Ms. Martinez had a claim against Mr. Leeds. (DE #55 ¶14). However in their Opposition to Defendants' Motion for Summary Judgment, they instead state that Leeds "retained Attorney Robert Klein because Tew Cardenas starting casting blame on Leeds." (DE #62 ¶16). These statements are inconsistent and contradictory. Certainly, as to the first reason for Klein's hiring, there would have been no need to retain Mr. Klein's services if there was not the fear of, if not an actual, claim levied against Mr. Leeds by Ms. Martinez.

"on behalf of the insureds [for] those sums in excess of the deductible that the Named Insured becomes legally obligated to pay as damages because of Claims first made against the Insured for actual or alleged errors [or] omissions ... arising out of Professional services ... and reported to us in writing during the Policy Period."

(DE #1-4 at 19).

The policy defined what constituted a claim,[5] and further stated that coverage would be provided only in the event that the following conditions were satisfied: 1) the claim occurred in the coverage territory; 2) the claim was raised by a client of the Named Insured; 3) the claim arose from the Named Insured's professional services; 4) the claim occurred on or after the Retroactive Date; and 5) the claim was reported within ten days of receipt "by the Named Insured of a written notice of a claim or circumstances which could give rise to a claim." *Id.* at 14. Leeds' retroactive date was February 1, 2006, meaning that the policy was inapplicable to any claim "arising from, attributable to, or based upon any WRONGFUL ACT(s) committed or alleged to have been committed or alleged to have been committed" prior to that time.

Another relevant section within the policy further clarified Defendants' obligations in the event of a claim. Under that section, the policy stated that "[n]o insured shall, except at their own expense, make any payment, admit any liability, agree to any settlement of a claim incur any expenses or assume any obligations without [Defendants'] written consent." (DE #1-4 at 27).

---

[5] Under the policy, a claim was defined as follows:

> A written demand for money upon the Insured from a third party which alleges an error, omission, personal and advertising injury as a result of Professional Services rendered by the Insured. Claim includes the service of suit or receipt of legal notice of legal proceeding, civil proceeding, arbitration proceeding or any other alternative dispute resolution proceeding seeking damages arising out of an error, omission, or personal and advertising injury to which this insurance applies. A Claim or circumstance which could give rise to a Claim shall be considered to have bbeen first made at the time it is reported to [Defendants] in writing.

(DE #1-4 at 14).

5

### C. Settlement Discussions

On March 12, 2008, over six months after Ms. Martinez first expressed her dissatisfaction with Leeds and Tew Cardenas and Leeds obtained resulting representation on his own behalf and several months after Leeds signed a professional insurance policy, Ms. Martinez retained her own counsel, Omar Ortega, to represent her interests in a potential malpractice claim against Leeds and/or Tew Cardenas. Beginning in April 2008, Ortega and Klein began attempting to resolve any claim that Ms. Martinez might have against Mr. Leeds. The record reflects email communications between Klein and Ortega from the end of August 2008 through the end of October 2008, discussing the possibility of mediation of Martinez's claims against Mr. Leeds. At one time, Klein sent Ortega a settlement offer, although it was never signed by Ms. Martinez.[6] On November 17, 2008, Ortega emailed Klein a copy of a draft complaint by Ms. Martinez against Leeds and several others. The basis for Ms. Martinez's claim was her inability to share in the collection of the Cuban funds collected by Tew Cardenas and paid out, in part, to Ms. McCarthy.[7] In her draft complaint, she sought $27,000,000.

Plaintiffs did not notify Defendants of Ms. Martinez's claim until December 2, 2008. At that time, they submitted a Claim Notification Form and informed Defendants' corporative representative, Barbara Vinton, that mediation had been scheduled.[8] At that time, by his own testimony, Mr. Leeds informed Ms. Vinton of the amount of Ms. Martinez's

---

[6] Plaintiffs characterize the talks Mr. Klein had with Mr. Ortega as "unsolicited" attempts at "resolving Martinez's dissatisfaction." (DE #55 ¶¶17,19). However, the record does not bear out that characterization.

[7] The parties dispute when Mr. Leeds' negligence occurred. Plaintiffs contend that it occurred in December 2006, when Leeds failed failed "to ensure that [Ms. Martinez] participate in the monies collected in December 2006." (DE #55 ¶24). Defendants contend that Leeds' negligence occurred in 2004 and 2005, when he failed to fix the domestication of the judgment in New York. (DE #60 ¶24).

[8] The parties disagree as to whether Leeds informed Defendants of the date and time of the scheduled mediation. (DE #60 ¶28).

claim, but never informed her of any prior settlement discussions by the parties, or informed her how much she believed would be necessary to settle the claim. Ms. Vinton authorized the resolution of the matter at mediation, but never explicitly authorized either a settlement or an amount to be paid in settlement. Leeds attended the January 7 mediation and settled Martinez's claim for $287,000. Two weeks later, Ms. Vinton contacted Plaintiffs about the outcome of the mediation. When informed that the parties had entered into a settlement, Ms. Vinton told Mr. Leeds that his settlement was unauthorized and would not be covered under the terms of the insurance policy. On January 30, 2009, Defendants denied coverage of the settlement on two grounds: 1) Martinez's claim did not meet the policy's definition of a "claim;" 2) the claim was settled without Defendants' consent.

### III. DISCUSSION

#### A. Plaintiffs' Summary Judgment Motion

Plaintiffs seek summary judgment on their own behalf, arguing that neither of Defendants' stated bases for denial of coverage is borne out by the record. As to the first basis for denial, Plaintiffs contend that Martinez's draft complaint against Leeds constituted a claim within the meaning of the policy and that, prior to receipt of that draft complaint, no claim existed because "Martinez had not made any monetary demands." (DE #55 at 11). As such, Plaintiffs state their notice of the claim to Defendants was timely, as it was given within ten business days "of Klein's receipt of Ortega's November 17, 2008 email demanding payment and attaching Martinez's draft complaint." (DE #55 at 11).

As to the second basis for denial, Plaintiffs urge this Court to find that Leeds was authorized by Defendants to settle the claim. Defendants' representative, Ms. Vinton, emailed Leeds on December 5, 2008, confirming an earlier telephone conversation and

7

stating as follows: "As agreed – you will attend the mediation (please advise date) and call me with the results. If the matter is not resolved – I will need some additional information to determine coverage. Additionally, we can discuss the retention of Mr. Klein." (DE #55, Ex. E). Plaintiffs claimed that they relied on Ms. Vinton's implicit grant of authority to "resolve" the claim against Leeds, and that Defendants are now estopped from arguing otherwise. (DE #55 at 13-14).

### B. Defendants' Summary Judgment Motion

In contrast, Defendants' seek judgment on their behalf on numerous bases. First, they claim that Leeds' alleged malpractice occurred prior to the retroactive date of the Policy, meaning that there can be no coverage thereunder. Second, Defendants claim that Plaintiffs breached their notice requirements under the Policy and, as such, Defendants cannot be liable under the terms of the Policy. Lastly, Defendants argue that "Leeds violated the strict provisions of the Policy by settling the Martinez claim without the Defendant's [sic] express written consent." (DE #58 at 3).

### C. Analysis

The Court finds that there are no genuine issues of material fact that would prevent summary judgment on Defendants' behalf. Indeed, Defendants are due summary judgment on several discrete bases: 1) Plaintiffs failed to notify Defendants within ten days of receiving notice of Martinez's claim, as is required under the terms of the Policy; and 2) Plaintiffs failed to obtain express written authorization of their settlement.[9] As such, Plaintiffs' Motion for Summary Judgment shall be denied and Defendants' Motion for

---

[9] Given its findings as to the other bases for summary judgment, the Court declines to address whether Plaintiff Leeds' negligent actions took place before the retroactive date contained within the Policy.

Summary Judgment shall be granted for the following reasons.

### i. Failure to Provide Timely Notice

The Policy at issue is clear as to its notice requirements. There are two such requirements: an immediate notice provision and a ten-day notice requirement.

Plaintiffs claim that they satisfied the immediate notice provision of the Policy because, until they were served with a written draft complaint by Ortega on Martinez's behalf on November 18, 2007, no claim existed as defined by the Policy. However, Plaintiffs' attempt to parse multiple definitions of "claim" fails given the undisputed record evidence before the Court.

The parties agree that Leeds represented Martinez in an action against Cuba, or that Martinez received a final judgment of $27,000,000 in 2001. They also agree that Leeds, along with Tew Cardenas and Ms. Conniff, continued to represent Martinez in seeking recovery on that judgment and, for whatever reason, Martinez did not participate in the recovery of certain frozen Cuban assets in 2006. Furthermore, they agree that Martinez was dissatisfied with her inability to share in that recovery and that she contacted Leeds and Tew Cardenas to express that dissatisfaction. Perhaps most tellingly, however, Plaintiffs concede that there were settlement discussions as to Martinez's claim between Klein, Leeds' attorney, and Ortega, who represented Martinez. While Plaintiffs now contend that no "agreement existed at that time between Leeds and Martinez to settle her claim" (DE #62 at 24), the failure to reach an agreement does not undermine the inevitable conclusion that Leeds was aware of Martinez's claims and sought to resolve them on his own, prior to contacting Defendants. Settlement offers were evidently made prior to April 8, 2008, and mediation dates were bandied about since at least August 26, 2008.

Yet, Plaintiffs contend that Martinez's claims did not constitute "Claims" under the

9

Policy because they were not comprised of monetary demands.[10]  Therefore, the issue that must be decided by this Court is whether the claims being discussed by Leeds and Martinez as early as April 2008 constituted "written notice of a claim or circumstances which could give rise to a claim" under the meaning of the Policy.  The Policy defines "claim" as follows:

> [A] written demand for money upon the Insured from a third party which alleges an error, omission ... as a result of professional services rendered by the Insured.  Claim includes the service of suit or receipt of a written notice of legal proceeding, civil proceeding, arbitration proceeding, or any other alternative dispute resolution proceeding seeking damages arising out of an error, omission ...to which this insurance applies.

(DE #1-4 at 13).  This is not the limit of an insured's reporting requirement, however.  As noted above, the ten-day reporting requirement is more expansive than the definition of "claim": a "Named Insured [must give] ... written notice of a claim or circumstances which could give rise to a claim" within ten days.  (DE #1-4 at 14).

Accordingly, the Court must determine whether the discussions between Klein and Ortega, in which they undisputedly exchanged settlement documents, constituted "circumstances which could give rise to a claim."  On review of the record, there can be no dispute that the circumstances in this instance were such that Leeds was clearly on notice as to the basis for Martinez's claims, regardless of whether he had received a "written demand for money."[11]  The facts clearly demonstrate that Leeds long had knowledge of Martinez's claims and that he acted on that knowledge himself for over six months before involving Defendants.  Such delay is unreasonable as a matter of law.  *See, e.g., Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782 (Fla. 3d DCA 1981) (holding 42-day notice untimely).

---

[10] Plaintiffs' argument that they gave written notice of Martinez's malpractice claim within the policy period is a red herring. (DE #62 at 13).  There is no dispute whether the December 2, 2008 notice was provided with the period of coverage; what is disputed is whether the December 2 notice was timely.

[11] Indeed, the Court notes the discussions between Klein and Ortega and finds reference to settlement of Martinez's claims is pervasive. Because of its other findings, however the Court need not determine whether these discussions were preceded by a "written demand for money" as defined by the Policy.

*See also Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 515, 515 (Fla. 1983) (discussing reasonableness in context of notification of claims). As such, Plaintiffs' December 2, 2008 notification to Defendants was untimely.

Nonetheless, Plaintiffs argue that, even if their notice was untimely, Defendants are still required to cover their claim so long as Defendants were not prejudiced. Relying on *National Gypsum Co. v. Traveler's Indemnity Co.*, 417 So. 2d 254 (Fla. 1982), Plaintiffs state that, in the event of untimely notice, "prejudice is presumed, but recovery is precluded if the insured can demonstrate lack of actual prejudice." *Id.* at 256. Here, Plaintiffs contend that there can be no actual prejudice where Leeds settled a potential $27,000,000 claim for the relative pittance of $287,500. (DE #62 at 15).

However, the issue is not whether the settlement amount entered into by Leeds and Martinez was less than Martinez's claims may have been worth; the issue is instead whether Plaintiffs' late notice prejudiced Defendants. The Court finds that it did. Regardless of whether Leeds' negligent actions in this instance were covered by the Policy, it is clear that Plaintiffs' delay prevented Defendants from investigating the negligence claims to its satisfaction or participating meaningfully in either Leeds' defense or in the settlement of Martinez's claims. *See, e.g.*, (DE #58 at 14). Any other finding would vitiate the purpose of an immediate-notice provision under an insurance policy.

Plaintiffs' delay is even clearer when considered in light of the ten-day notice provision of the Policy. Under that provision, coverage is refused unless notice of a claim is given within ten days "by the Named Insured of a written notice of a claim or circumstances which could give rise to a claim." (DE #1-4 at 14). As noted above, the facts are clear that Plaintiffs had notice of the circumstances which would give rise to Martinez's claim, if not the claim itself, since at least April 2008. However, they failed to report that

claim to Defendants until December 2, 2008. This falls well beyond the ten-day notice requirement contained within the Policy.

Given that Plaintiffs failed to comply with either the Policy's immediate notice provision or the ten-day notice requirement, Defendants were not obligated to provide coverage for any loss that Leeds may have suffered. Therefore, summary judgment is appropriately granted to Defendants as to the pertinent claim of coverage by Plaintiffs under the Policy.

           ii.      Failure to Obtain Written Authorization

Beyond Plaintiffs' failure to provide timely notice, summary judgment is also appropriate on Defendants' behalf as to Plaintiffs' failure to obtain written authorization for the settlement of any claim by Martinez. Plaintiffs contend that Defendants had waived their right to defend their denial of coverage because of the lack of written consent.

The Court cannot agree. The authorization that Leeds claims he received from Defendants' representative, Ms. Vinton, did not qualify as authorization under the meaning of the Policy. She did not provide a settlement ceiling, nor was she informed of all the prior settlement discussions that Plaintiffs had with Ortega. As such, it is indisputable that she could not have been informed of Martinez's claims enough to give *carte blanche* to an insured to settle a claim that had been valued at $27,000,000. Indeed, Plaintiffs argument to the contrary defies logic, especially given the magnitude of Martinez's claims against Leeds. This common-sense realization based on the undisputed facts found within the record, when combined with the Policy requirement for Defendants' written consent in settling claims, bars Plaintiffs' recovery here.

As a final matter, the Court notes that Plaintiffs' contention that Defendants admitted coverage and permitted them to settle Martinez's claims is not supported by the

12

record. When Plaintiffs contacted Defendants on December 2, 2008 to inform them of the pending mediation, Plaintiffs conceded that there was no discussion as to any monetary settlement. Although Defendants were informed of the size of Martinez's claims, they were given no other essential information. Nor did Defendants authorize settlement up to a certain amount. Taking Plaintiffs' contention to its logical extreme, their claim is that Defendants would have been bound by any settlement negotiated at mediation, regardless of the amount. Such a result would clearly breach the requirements of the Policy, and would also expose Defendants to an unlimited liability for a settlement amount that was neither expressly approved nor expressly authorized.

### IV. CONCLUSION

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. Plaintiffs' Motion for Summary Judgment (DE #55) is **DENIED**.
2. Defendants Motion for Summary Judgment (DE #58) be, and the same is, hereby **GRANTED**.
3. The Clerk shall **DENY** all pending motions as moot, and **CLOSE** the case.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 19th day of July, 2011.

/s/ James Lawrence King
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:

***Counsel for Plaintiffs***
**Randall Scott Goldberg**
Ver Ploeg & Lumpkin
100 SE 2nd Street
30th Floor
Miami, FL 33131-2154
305-577-3996
Fax: 577-3558
Email: rgoldberg@vpl-law.com

**Stephen A. Marino , Jr.**
Ver Ploeg & Lumpkin, P.A.
100 SE 2nd Street
30th Floor
Miami, FL 33131-2154
305-577-3996
Fax: 577-3558
Email: smarino@vpl-law.com

***Counsel for Defendants***
**James Miller Kaplan**
Kaplan Zeena LLP
2 South Biscayne Boulevard
Suite 3050
Miami, FL 33131
305-530-0800
Fax: 305-530-0801
Email: james.kaplan@kaplanzeena.com

**Clifford Lawrence Rostin**
Kaplan Zeena
2 South Biscayne Blvd.
One Biscayne Tower, Suite 3050
Miiami, FL 33131-1806
305-530-0800
Fax: 305-530-0801
Email: clifford.rostin@kaplanzeena.com

**Jennifer A. Latham**
Butler Pappas Weihmuller Katz Craig
777 S Harbour Island Boulevard
One Harbour Place Suite 500
Tampa, FL 33602
Fax: 3055300801
Email: jennifer.latham@kaplanzeena.com